Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7823 | **DATE** | May 24, 2004 |
| **CASE TITLE** | R.R. DONNELLEY & SONS CO vs. JET MESSENGER SERVICE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss the second amended complaint is denied.. Defendant's motion to strike the declaration of Kraznow is moot. Defendant is directed to file its answer to the complaint by June 8, 2004. The parties are directed to conduct an FRCP 26(f) conference and file a form 35 by June 10, 2004. Status hearing to set a discovery and trial schedule is set for June 15, 2004 at 9:00 am.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 25 2004 | |
| ✓ | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 2004 MAY 25 PM 12:41 | 5-24-04 date mailed notice |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R.R DONNELLEY & SONS COMPANY, d/b/a R.R. DONNELLEY LOGISTICS SERVICES <br> Plaintiff, <br><br> v. <br><br> JET MESSENGER SERVICE, INC. <br><br> Defendant. | ) ) ) ) ) ) No. 03 C 7823 ) ) ) ) ) ) |



## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Before this court is defendant Jet Messenger Service Inc.'s ("Jet"), motion to dismiss the Second Amended Complaint filed against it by plaintiff R.R. Donnelley Logistics Services ("DLS"). DLS's Second Amended Complaint alleges diversity jurisdiction under 28 U.S.C. § 1332(a) as the basis for this court's subject matter jurisdiction. Jet is a New Jersey corporation principally doing business in New Jersey, and DLS is a Delaware corporation principally doing business in Illinois. The Second Amended Complaint contains four counts: count I, breach of contract; count II, fraud; count III, tortious interference with contract; and count IV, tortious interference with expectancy. Generally, the dispute arises out of an alleged agreement between DLS and Jet where Jet was to be a subcontractor for DLS on a customer account. (Sec. Am. Compl. at 3.) DLS alleges Jet breached its promise not to communicate directly with the customer (Pl.'s Resp. at 13), which allegedly resulted in Jet acquiring the account by allegedly using information Jet gained while it was DLS's subcontractor. (Sec. Am. Compl. at 7.) Jet's motion asserts that this court lacks personal jurisdiction over Jet and also contends that DLS's Second Amended Complaint fails to state a claim.

1

For the following reasons, Jet's motion to dismiss is denied.

## BACKGROUND FACTS

For the four-year period of June 1, 1999 to May 31, 2003, DLS had a service contract ("service contract") with SunTrust Banks, Inc. ("SunTrust"), a commercial banking organization headquartered in Atlanta, Georgia. Under the service contract, DLS agreed to provide logistics management services and to provide related manpower, products and services on behalf of SunTrust.[1] From June 1, 1999, until the actual termination of DLS's services under the service contract in September of 2003, DLS provided several logistics management services for SunTrust. To fulfill a part of DLS's service contract with SunTrust, DLS engaged Jet as a subcontractor. Under that subcontract, Jet was to provide for-hire courier services for the movement of SunTrust's freight on DLS's behalf.

In late 2002, DLS, Jet, and other contractors and subcontractors in the industry became aware that SunTrust intended to send out a Request For Proposals ("RFP") in mid-February 2003. SunTrust sent the RFP out for the purpose of determining with whom to open a new logistics management contract after its contract with DLS terminated. DLS initially intended to respond to SunTrust's RFP without Jet as a subcontractor, but due to pressure from SunTrust, DLS agreed to retain Jet as a subcontractor.

According to DLS, Jet, prior to DLS's response to the RFP, agreed to remain as DLS's subcontractor on the proposed service contract with SunTrust and also agreed not to communicate directly with SunTrust. This agreement between DLS and Jet was purportedly negotiated and consummated between January 7, 2003 and January 8, 2003. On January 8, 2003, Jet's president

---

[1] All of these facts are taken directly from the Second Amended Complaint filed on March 15, 2004. (Dkt.# 12.)

2

and DLS's Supplier Contract Manager agreed to terms for Jet to act as the subcontractor on the proposed service contract with SunTrust. Jet's president scheduled a trip to DLS's headquarters in Chicago, Illinois, for January 8, 2003 to sign the new agreement with DLS. Jet's president, however, never made that trip to Chicago to sign the new agreement. After January 8, 2003, Jet made no representation that it intended to rescind its new agreement with DLS.

Some time after the new agreement was made on January 8, 2003, Jet approached SunTrust directly, in breach of its agreement with DLS, and provided a set of rates to SunTrust significantly lower than the rates Jet provided to DLS. Jet was able to provide the separate and lower set of rates Jet quoted to SunTrust because of Jet's knowledge of the logistics management system created by DLS. On May 31, 2003, the date the service contract between DLS and SunTrust was to end, DLS and SunTrust amended their original service contract by continuing it on a month to month basis. On August 7, 2003, SunTrust notified DLS that it was terminating its service contract with DLS effective September 6, 2003. SunTrust effected its termination of its service contract with DLS and then began to operate directly with Jet.

## STANDARD OF REVIEW

While a plaintiff need not allege facts establishing personal jurisdiction in the complaint, the plaintiff bears the burden of demonstrating the existence of personal jurisdiction once it has been challenged by the defendant. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). When a motion to dismiss based upon personal jurisdiction is made on the basis of written materials, as it is here, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." Id. (quoting Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002)) (citations omitted).

Dismissal pursuant to Rule 12(b)(6) is proper only when it appears beyond a reasonable

3

doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 335 U.S. 41, 45-46 (1957). This court must accept the well-plead allegations of the complaint as true, and construe any ambiguities in favor of the plaintiff. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002). However, a plaintiff can plead herself out of court by pleading facts that undermine the allegations set forth in the complaint. McCormick v. City of Chicago, 230 F.3d 319, 325 (7th Cir. 2000).

## ANALYSIS

I. Consent to Personal Jurisdiction

DLS relies upon case law primarily developed in the Eight Circuit as well as Jet's compliance with 49 U.S.C. § 13304(a) to support its contention that this court has personal jurisdiction over Jet due to Jet's consent, regardless of Jet's contacts with Illinois. According to DLS, Jet's consent comes from the fact that Jet has registered an agent in Illinois, pursuant to federal law, for the purpose of accepting service of process.

Before reaching the merits of DLS's argument, this court must address a preliminary matter raised by the parties. The parties dispute the weight this court should give to Illinois case law holding that the registration of an agent to receive process "is not an independently determinative factor . . . in determining whether a foreign corporation is doing business in Illinois[,] [because] [t]here is nothing in section 2-209 of the Code that supports asserting *in personam* jurisdiction over a corporate defendant simply because the plaintiff served summons upon the defendant's Illinois registered agent." Alderson v. Southern Co., 747 N.E.2d 926, 944 (Ill. App. Ct. 2001) (citing Colletti v. Crudele, 523 N.E.2d 1222, 1230 (Ill. App. Ct. 1988)). Jet argues that these cases are dispositive of the question of whether this court has personal jurisdiction over it due to consent. In response, DLS states in a conclusory manner, without any citation to authority, that "State law

4

concerning this issue is preempted." (Pl.'s Resp. at 4.)

The Illinois cases cited by Jet are inapplicable to the issue before this court. The issue this court is considering is whether Jet has consented to suit in Illinois by designating an agent to accept service of process. The Illinois cases cited by Jet consider the designation of an agent in the context of analyzing whether a foreign corporation is doing business in Illinois. See Alderson, 747 N.E.2d at 944 ("The designation of an Illinois registered agent is not an independently determinative factor, however, in determining whether a foreign corporation is doing business in Illinois."). Furthermore, these cases do not hold that the Illinois Constitution bars the finding that a defendant consents to personal jurisdiction in Illinois by designating an agent to receive service of process. And the Seventh Circuit has made clear that "the Illinois long-arm statute now 'permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions.'" Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 714 (7th Cir. 2002) (citing Central States Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 940 (7th Cir. 2000)).

Finally, while the Seventh Circuit has consistently adhered to the ruling that "[a] district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction," see Purdue Research Found., 338 F.3d at 779; Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., 597 F.2d 596, 598 (7th Cir. 1979); Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 199 F.2d 485, 486 (7th Cir. 1952), the Seventh Circuit has also excluded consenting defendants from this rule. See McIlwee v. ADM Indus., Inc., 17 F.3d 222, 223 (7th Cir. 1994) ("A federal district court sitting in diversity in Illinois has jurisdiction over a non-resident, non-consenting defendant if an Illinois state court would have jurisdiction over that party.") (citation omitted).

Accordingly, this court holds that the Illinois cases cited by Jet are not dispositive of the

5

question presented to this court: namely, whether a defendant who has designated an agent to accept service of process in a State pursuant to a federal statute has consented to personal jurisdiction in that State.

Turning to federal law, Jet registered an agent in Illinois pursuant to the 49 U.S.C. § 13304(a), which states, in pertinent part:

> A motor carrier or broker providing transportation . . . shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier or broker.

49 U.S.C. § 13304(a). According to DLS, Jet's registration pursuant to this federal statute effects personal jurisdiction over Jet in Illinois courts without any requirement that Jet have any further minimum contacts with Illinois. In support, DLS cites to Ocepek v. Corporate Transp., 950 F.2d 556 (8th Cir. 1991),[2] which held that designation of an agent in Missouri pursuant to this statute gave the district court in Missouri personal jurisdiction by consent regardless of any minimum contacts analysis.[3] Id. at 557. Accord Shapiro v. Southeastern Greyhound Lines, 155 F.2d 135, 136 (6th Cir. 1946); Rounds v. Rea, 947 F.Supp. 78, 82-84 (W.D. N.Y. 1996); Scott v. Southeastern Greyhound Lines, 5 F.R.D. 11, 13 (N.D. Ohio 1945); McKamey v. Vander Houten, 744 A.2d 529, 531-32 (Del.

---

[2] At the time Ocepek was decided, the portion of Title 49 that requires the designation of an agent to receive process was codified as 49 U.S.C. § 10330(b).

[3] In Ocepek, the plaintiff, a citizen of Missouri, was hurt in a car accident that occurred in Ohio. Id. at 556. The plaintiff then sued the defendant, a citizen of New York, in District Court for the Eastern District of Missouri for allegedly causing the car accident in Ohio. Id. The defendant was a "motor carrier or broker" covered by the Motor Carrier Act and had designated an agent in Missouri for receiving service of process as required by the Act. Id. The district court, after determining that the defendant did not have sufficient contacts with Missouri, dismissed the case for lack of jurisdiction. Id. at 556-57. The Eighth Circuit reversed. In Ocepek, the Eight Circuit relied heavily on its previous decision in Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196 (8th Cir. 1990), which held that appointment of an agent to receive service of process pursuant to a state statue confers personal jurisdiction on the basis of consent.

6

1999); Mittelstadt v. Rouzer, 328 N.W.2d 467, 468-69 (Neb. 1982). However, courts are split on this issue. Zyblut v. Shippers Best Express, Inc. 408 A.2d 978, 978-79 (D.C. 1979) (no personal jurisdiction, despite designation of an agent, where the suit did not "relate to the defendant's activities as an interstate carrier"); Tyler v. Gaines Motor Lines, Inc., 245 F.Supp.2d 730, 732 (D. Md. 2003) (refusing to rule that designation of an agent pursuant to 49 U.S.C. § 13304(a) resulted in consent to personal jurisdiction); Lyons v. Swift Transp. Co., No. 01-209, 2001 WL 1153001, at *5-*7 (E.D. La., Sept. 26, 2001) (same); Maroshek v. East Penn Trucking Co., Civ. A. No. 92-27 SSH, 1992 WL 101621, at *1 (D.D.C. Apr. 29, 1992) (designation of an agent pursuant to 49 U.S.C. § 10330(b) was not sufficient to satisfy District of Columbia long-arm statute).

Jet urges this court to side with the United States District Court of Maryland in Tyler and hold that compliance with 49 U.S.C. § 13304(a) does not result in consent to personal jurisdiction.[4] The court in Tyler, like the court in Lyons, refused to follow the holding of Ocepek on the grounds that both Tyler's and Lyons's respective Circuit Courts of Appeals had held that appointment of a registered agent was insufficient to establish general personal jurisdiction over a corporation. Specifically, Tyler relied on Ratliff v. Cooper Lab., Inc., 444 F.2d 745, 748 (4th Cir. 1971), where the Fourth Circuit noted that "the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context." See also Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000) (rejecting "the argument that appointing a registered agent is sufficient to establish general personal jurisdiction

---

[4] This court declines to consider the only other case cited by Jet, XL Specialty Ins. Co. v. Bullocks Express Transp., 2002 WL 505143 (Cal. App. 2002), because it is an unpublished opinion not to be cited according to California Rules of Court 977(a). Furthermore, Jet has not argued that the activities giving rise to this suit are not related to its activities an interstate carrier. Therefore, this court will not consider whether personal jurisdiction may be inappropriate under the facts of this case on that basis.

7

over a corporation"); Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir. 1992) (same as applied to registration under state law). These cases from the Fourth, Fifth and Eleventh Circuits have found that "the principles of due process require a firmer foundation than mere compliance with state domestication statutes." Ratliff, 444 F.2d at 748.

The Seventh Circuit, however, has stated that "by agreeing to designate an agent for service of process, [a] foreign [corporation] can waive [the] requirement of 'minimum contacts.'" Employers Ins. of Wausau v. Banco De Seguros Del Estado, 199 F.3d 937, 943 (7th Cir. 2000) (citing RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1280 (7th Cir. 1997)). Admittedly, the Seventh Circuit in Employers Ins. of Wausau found waiver in the context of a contract between the parties that included a "Service of Suit" clause. Nevertheless, this court is convinced that the weight of authority analyzing 49 U.S.C. § 13304(a)'s service of process provision correctly holds that a corporation has consented to be sued in the forum where it designates an agent to receive service of process.

II.   Statute of Frauds

The Illinois Statute of Frauds states that:

No action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 ILCS 80/1. Jet argues that DLS's breach of contract claim in count I is barred by this statute, and that counts III and IV are similarly based on an unenforceable agreement. In response, DLS argues that a written contract actually exists, and that the contract could be performed in less than a year.

First, this court rejects DLS's contention that a written contract between the parties exists. On January 8, 2003, DLS sent an offer letter ("DLS's offer letter") (Sec. Am. Compl. Ex 10) to Jet.

8

DLS repeatedly argues to this court that the letter Jet sent in response on the same day ("Jet's response letter") (Sec. Am. Compl. Ex. 11) accepted DLS's offer letter. This argument is untenable. Jet's response letter first stated: "We have reviewed your letter . . . and can agree to the following modified provisions." The letter then modifies nearly all of the provisions of DLS's offer letter. These modifications foreclose the conclusion that the Jet response letter was an acceptance. D'Agostino v. Bank of Ravenswood, 563 N.E.2d 886, 889 (Ill. App. Ct. 1990) (citations omitted) ("An acceptance requiring any modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed."). Furthermore, Jet's response letter does not purport to accept DLS's offer letter. DLS's offer letter stated: "Jet Messenger must sign a current Supplier contract with [DLS] that includes a non-compete clause." (Sec. Am. Compl. Ex 10.) And Jet's response letter stated: "Jet . . . will agree to sign a contract with [DLS] that includes a non compete clause . . . . Since we have not seen your Standard Contract this is of course subject to review." (Sec. Am. Compl. Ex. 11.) Jet's letter also ended with the phrase: "Thank you for your consideration and we await your response." (Id.) Jet's response letter is clearly not an objective manifestation of acceptance, see Rosin v. First Bank of Oak Park, 466 N.E.2d 1245, 1249 (Ill. App. Ct. 1984) ("To be valid, an acceptance must be objectively manifested, for otherwise no meeting of the minds would occur."), which provides an additional basis for rejecting DLS's argument that a signed agreement exists. Finally, this court rejects DLS's argument, to the extent it is made, that Jet's response letter can operate to satisfy the statute of frauds despite the fact that it does not accept DLS's offer letter. See Central Illinois Light Co. v. Consolidation Coal Co., 349 F.3d 488, 488 (7th Cir. 2003) (citations omitted) ("documents that *merely* evidence negotiations do not satisfy the statute of frauds.)

Second, this court holds that at least part of DLS's breach of contract claim is based on a

contract that cannot be performed within a year. Nevertheless, the motion to dismiss count I is denied. It is unclear from DLS's Second Amended Complaint and the parties' memoranda which contract DLS alleges was breached. At times, DLS clearly refers to the standard Supplier Contract as the basis of the alleged agreement. (Sec. Am. Compl. ¶¶ 42, 44.) But DLS also seems to refer to a separate agreement (likely made up of the terms discussed in DLS's offer letter and Jet's response letter) that exists independently of the standard Supplier Contract. (Sec. Am. Compl. ¶¶ 26, 45.) The distinction is significant, because the standard Supplier Contract cannot be performed within a year, but it is not clear how long it would take to perform any agreement separate from the standard Supplier Contract.

"The test to determine if an agreement is subject to the one-year provision of the statute of frauds is whether, when it was made, it was capable of full performance within one year, not whether full performance was likely." Silvestros v. Silvestros, 563 N.E.2d 1084, 1086 (Ill. App. Ct. 1990)(citations omitted). If DLS alleges that an agreement exists, separate from the standard Supplier Contract, then it is not clear that this separate agreement could not be performed within a year. In fact, it would be consistent with the allegations of the Second Amended Complaint that this possible separate agreement was to continue contemporaneously with DLS's month to month relationship with SunTrust. Therefore, that agreement would not be barred by the statute of frauds. However, the standard Supplier Contract, which includes a covenant not to compete, was for a term of three years. (Sec. Am. Compl. Ex. 13, § 17). Therefore, that agreement would be barred by the statute of frauds, unless DLS can prove, as it has alleged, that the doctrine of equitable estoppel applies. Bower v. Jones, 978 F.2d 1004, 1010 (7th Cir. 1992) ("Illinois apparently does allow the use of equitable estoppel to bar an opponent's statute of frauds defense.")

Given the standard of review which this court must apply in analyzing a motion to dismiss,

10

dismissal of count I would be inappropriate at this time.[5] As explained, DLS may be able to prove the existence of a contract other than the standard Supplier Contract, which would render Jet's defense of the statute of frauds inapplicable. Furthermore, even if the standard Supplier Contract is the only agreement, DLS may be able to prove a set of facts consistent with the Second Amended Complaint that would establish equitable estoppel. Accordingly, the motion to dismiss for failure to state a claim is denied. However, both parties should bear in mind that these arguments regarding the statute of frauds can be raised later at summary judgment.

## CONCLUSION

Accordingly, the motion to dismiss is denied.[6] Jet is ordered to file an answer to the Second Amended Complaint on or before June 8, 2004. Counsel are to confer pursuant to Rule 26(f) and file a jointly completed Form 35 signed by each counsel on or before June 10, 2004. This case is set for a report on status and the entry of a scheduling order at 9:00 a.m. on June 15, 2004. The parties are urged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: May 24, 2003

---

[5] Because DLS may be able to prove the existence of an enforceable covenant not to compete, this court need not consider Jet's assertion of "competitor's privilege."

[6] Jet's Motion to Strike Declaration of Keith Kranzow (Dkt. No. 19) is moot.

11